**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL., : : : | |
| Plaintiffs, : : | |
| v. : : | Civil Action No. 13-02953 (KM)(MCA) |
| : : | **REPORT AND RECOMMENDATION** |
| UBS REAL ESTATE SECURITIES, ET AL., : : | |
| Defendants. : : : | |

**ARLEO, U.S.M.J.:**

This matter comes before the Court upon the Motion to Remand filed by Plaintiffs The Prudential Insurance Company of America, Pruco Life Insurance Company, Prudential Retirement Insurance and Annuity Company, and Prudential Investment Portfolios 2 (collectively "Plaintiffs"). (Dkt. No. 6). Defendants UBS Real Estate Securities, Inc., UBS Securities LLC, and Mortgage Asset Securitization Transactions, Inc. (collectively "UBS" or "UBS Defendants") oppose remand. (Dkt. No. 20). Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Kevin McNulty, U.S.D.J., referred the Motion to the undersigned for Report and Recommendation. The Court heard the parties' oral arguments related to the Motion on August 27, 2013. Having considered the parties' written submissions and oral arguments, for the following reasons, it is respectfully recommended that Plaintiff's Motion to Remand be **GRANTED**.

1

## I.    BACKGROUND

From 2004 to 2007, Plaintiffs purchased over \$208 million in Residential Backed Securities ("RMBS" or "Securities") across eight (8) separate securitizations (the "Certificates") from UBS Defendants. (Compl.; Dkt. No. 1-3, ¶ 1 & Ex. A-B). On or about April 1, 2013, Plaintiffs filed a 183-page, 565-paragraph Complaint in the Superior Court of New Jersey, Law Division, Essex County, Dkt. No. L002489-13. (Dkt. No. 1-3). In their Complaint, Plaintiffs generally allege that the registration statements, prospectuses, prospectus supplements, term sheets, and other written materials prepared by UBS to solicit Plaintiffs' purchases (the "Offering Materials") made numerous material misrepresentations and omissions regarding the underwriting guidelines followed by the originators of the underlying mortgage loans, as well as material misrepresentations regarding the risk profile and credit quality of loans. (Dkt. No. 1-3, ¶¶ 77-293 & Ex. C). As a result, Plaintiffs allege that the default rates on the mortgage loans have soared and the value of Plaintiff's Certificates have plummeted. (Dkt. No. 1-3, ¶¶ 14-15, 148-150, 457-70, 472). Based upon those allegations, Plaintiffs lodge the following five New Jersey state law causes of action against Defendants: (1) Common-Law Fraud/Fraudulent Inducement; (2) Aiding and Abetting Common Law Fraud/Fraudulent Inducement; (3) Equitable Fraud; (4) Negligent Misrepresentation; and (5) violation of the New Jersey Civil RICO, N.J.S.A. 2C:41-1, et seq.. (Dkt. No. 1-3, ¶ 476-565 (Counts I-V)).

On May 8, 2013, Defendants filed a notice to remove the state court action to this Court. (Notice of Removal; Dkt. No. 1). In the Notice of Removal, Defendants assert that federal subject matter jurisdiction exists in this case: (1) under 28 U.S.C. §1334(b), because this case is "related to" several bankruptcy proceedings involving non-party mortgage originators; and (2)

under 28 U.S.C. § 1332, because the "properly joined" parties to this case are diverse, and the matter in controversy exceeds $75,000. (Dkt. No. 1, ¶¶ 17-45).

In support of their jurisdictional argument under Section 1334(b), Defendants assert that several of the Certificates at issue are backed by mortgage loans originated by entities that have filed bankruptcy petitions or whose parent corporations have filed bankruptcy petitions (the "Bankrupt Originators").[1] (Dkt. No. 1, ¶ 18). Defendants allege that they entered into written indemnification agreements with each of the Bankrupt Originators that underlie the Securities. (Id., ¶ 21). Defendants argue that because at least four of those Bankrupt Originators have declared bankruptcy and have ongoing bankruptcy proceedings in District Courts around the country, the contractual indemnification clauses render this case "related to" those ongoing bankruptcy proceedings, and therefore give rise to federal subject matter jurisdiction pursuant to Section 1334(b). (Id., ¶¶ 18-27).

In support of their jurisdictional argument under Section 1332, Defendants assert that Plaintiffs Prudential Retirement Insurance and Annuity Company ("PRIAC") and Prudential Investment Portfolios Company 2 ("PIP2") were fraudulently joined to this action for the purpose of destroying federal diversity jurisdiction. (Dkt. No. 1, ¶¶ 30-36). Defendants claim that these two entities should be disregarded by the Court in determining diversity jurisdiction, which will provide federal subject matter jurisdiction under Section 1332 in this case. (Id.)

On June 5, 2013, Plaintiffs filed the present Motion to Remand. (Dkt. No. 6). Plaintiffs argue that jurisdiction pursuant to Section 1334(b) does not exist because this case is not sufficiently "related to" any bankruptcy proceedings. (Id. at 12-24). Further, even if jurisdiction under Section 1334(b) exists, Plaintiffs assert that this action satisfies all the factors for both

---

[1] The Bankrupt Originators include, but are not limited to the following: Fremont Investment & Loan ("Fremont"); New Century Mortgage Corp. ("New Century"); Meritage Mortgage Corp. ("Meritage"); and First NLC Financial Services, LLC ("First NLC"). (Dkt. No. 1, ¶ 18).

3

mandatory abstention under 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1334(c)(1), and equitable remand pursuant to 28 U.S.C. § 1452(b). (Id. at 25-32). Lastly, Plaintiffs argue that there is no basis for diversity jurisdiction because all named plaintiffs are proper parties to this lawsuit, and the parties are not diverse. (Id. at32-35). Importantly, in support of their foregoing arguments, Plaintiffs note that other courts in this District have recently addressed some or all of the issues presented here in nearly identical Prudential cases.[2] (Id. at 8).

## II.   DISCUSSION

### A.   Removal Pursuant to 28 U.S.C. § 1441(a)

Generally, the federal removal statute provides that, "[e]xcept as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). It is well settled that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004). Further, where federal subject matter jurisdiction is based upon the parties' alleged diversity of

---

[2] Prudential Ins. Of Am. v. J.P. Morgan Sec., LLC ("J.P. Morgan"), No. 2:12–cv–03489, 2012 WL 6771977 (D.N.J. Dec. 22, 2012) (Walls, J.); Prudential Ins. Co. of Am. v. Barclays Bank PLC ("Barclays"), No. 12-5854, 2013 WL 221995 (D.N.J. Jan. 22, 2013) (Falk, J.). Judge Falk's report and recommendation was summarily adopted by Judge Martini, and that case has been remanded to Essex County. See Prudential Ins. Co. of Am. v. Barclays Bank PLC, No. 12-cv-05854, 2013 WL 1890279 (D.N.J. May 6, 2013) (Martini, J.). Moreover, on November 1, 2013, Plaintiffs sent a letter to the Court (Dkt. No. 29), apprising it of a recently-issued RMBS decision—Prudential v. RBS Financial Prods., Inc., No. 12-6822, 2013 U.S. Dist. LEXIS 156023 (D.N.J. Oct. 29, 2013) (Debevoise, J.), in which Judge Debevoise relied upon the prior decisions of Judges Walls and Falk and similarly granted a motion to remand. The Court finds all of these opinions to be persuasive on this Court's decision.

citizenship, 28 U.S.C. § 1441 "is to be strictly construed against removal." Samuel-Bassett, 357 F.3d 396 (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). In particular, "a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity jurisdiction has a 'heavy burden of persuasion.'" Boyer, 913 F.2d at 111 (citations omitted).

### B. "Related To" Bankruptcy Jurisdiction Pursuant to 28 U.S.C. § 1334(b)

UBS Defendants' first basis for removal is that this case purportedly "relates to" the bankruptcy proceedings of four Bankrupt Originators that contributed loans underlying some of Plaintiffs' Certificates. The threshold question is whether federal subject matter jurisdiction under 28 U.S.C. § 1334(b) exists because this case is "related to" several pending bankruptcy proceedings by virtue of indemnity agreements that Defendants have with the Bankrupt Originators, who are the debtors in those bankruptcies.

Section 1452(a) of the Bankruptcy Code allows for the removal from state court of any claims that arise under 28 U.S.C. § 1334(b), which confers on the district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. (emphasis added). This section was "intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).

In Pacor,[3] the Third Circuit articulated that "the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably

---

[3] "Pacor has been widely accepted as establishing the test for 'related to' jurisdiction." Steel Workers Pension Tr. v. Citigroup, Inc., 295 B.R. 747, 753 (E.D. Pa. 2003) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)). According to a recent Third Circuit decision, Pacor

have any effect on the estate being administered in bankruptcy." 743 F.2d at 994 (citations

omitted). Thus, under certain limited circumstances, a civil "action can be related to bankruptcy

if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either

positively or negatively) and which in any way impacts upon the handling and administration of

the bankrupt estate." Id. The Supreme Court, however, has cautioned that this standard is not

"limitless." Celotex Corp., 514 U.S at 308. As the Pacor Court itself noted, "[t]here must be

some nexus between the 'related' civil proceeding and the title 11 case." Pacor, 743 F.2d at 994.

Thus, the civil proceeding at issue must present more than the "mere potential" to "impact upon

[a] debtor's estate." Steel Workers Pension Tr., 295 B.R. at 753. If a debtor's liability cannot be

fixed in the supposedly related civil case and a second proceeding is required, then "related to"

jurisdiction does not exist. See Id. at 753; Pacor, 743 F.2d at 994; In re Federal-Mogul Global

Inc., 300 F.3d 368, 382 (3d. Cir. 2002) (reinforcing that "the test articulated in Pacor for whether

a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the

allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet

another lawsuit"); In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir. 2009) ("[T]here is no

related-to jurisdiction over a third-party claim if there would need to be another lawsuit before

the third-party claim could have any impact on the bankruptcy proceedings."); Barclays, 2013

WL 221995, at *4 (quoting Pacor, 743 F.2d at 994).

In view of Third Circuit precedent, in determining whether § 1452 "related to"

jurisdiction exists, Judge Falk recently summarized that:

> A defendant's claim for indemnity against a bankrupt debtor . . .
> only creates "related to" jurisdiction if the defendant can establish:
> (1) the liability of the bankrupt party is 'automatically triggered
> when the purported related action against the party seeking

"clearly remains good law in this circuit[.]" In re Federal-Mogul Global, Inc., 300 F.3d 368 (3d
Cir. 2002).

6

> indemnification is begun'; and (2) 'a later lawsuit against the
> debtor . . . [is not] a prerequisite to a finding of indemnification.'

Barclays, 2013 WL 221995, at *3 (emphasis added) (quoting Steel Workers Pension Tr., 295

B.R. at 753). Applying the foregoing standard here, the Court concludes that Defendants have

failed to carry their burden and establish that the indemnification clauses at issue are sufficient to

create "related to" federal subject matter jurisdiction in this case.

Defendants argue that there is "related to" bankruptcy jurisdiction in this case based on

certain indemnification agreements that they have with Bankrupt Originators—identified as

Fremont, New Century, Meritage, and First NLC—who are four, non-party companies who have

filed for bankruptcy.[4]  (Dkt. No. 1, at ¶¶ 18-21).  Defendants contend that the Bankrupt

Originators originated some of the loans underlying five (5) of the eight (8) RMBS Certificates

at issue in this case.  (Id.).  According to Defendants, they acquired some of the loans underlying

the Certificates from the Bankrupt Originators and, in doing so, entered into "almost identical"

indemnification agreements with each of the Bankrupt Originators.  (Id. at ¶ 21).  For example,

in their Notice of Removal, Defendants quote an indemnification clause in an agreement with

one of the Bankrupt Originators, Fremont, as follows:

> Fremont hereby agrees to indemnify and hold harmless the
> Company [Defendant Mortgage Asset Securitization Transactions,
> Inc.] and UBS [Defendant UBS Real Estate Securities Inc.] . . .
> from and against any and all losses, claims, expenses, damages or
> liabilities to which the Company or UBS, their respective officers
> or directors and any such controlling person may become subject
> under the [Securities Act of 1933] or otherwise, as and when such
> losses, claims, expenses, damages or liabilities are incurred, insofar
> as such losses, claims, expenses, damages or liabilities (or actions

---

[4] The Bankrupt Originators and their respective bankruptcy proceedings are: (1) Freemont, Central District of California, Case No. 08-13421-ES; (2) New Century, District of Delaware, Case No. 07-10416-JJC; (3) Meritage, Northern District of Texas, Case No. 09-309971-sgj7; and (4) First NLC, Southern District of Florida, Case No. 08-10632-PGH. (Notice of Removal, Dkt. No. 1, at ¶ 19).

> in respect thereof) arise out of or are based upon (1) any untrue statement or alleged untrue statement of any material fact contained in the Fremont Information . . . or arise out of, or are based upon or (2) the omission or alleged omission to state therein any material fact required to be stated therein or necessary to make the statement therein, in light of the circumstances under which they were made, not misleading, and will reimburse the Company and UBS, their respective officers and directors and any such controlling person for any legal or other expenses reasonably incurred by it or any of them in connection with investigating or defending any such loss, claim, expense, damage, liability or action, as and when incurred . . . .

(Id. at ¶ 22).[5] Defendants contend that the court has "related to" jurisdiction because the filing of Plaintiffs' Complaint, which alleges misstatements in the Offering Materials, "automatically triggered" the indemnification agreements and will have a "conceivable effect" on the bankruptcy proceedings of the Bankrupt Originators. (Defs.' Opp'n Br., Dkt. No. 20, at 9-13). This Court disagrees.

### i. *Defendants Have Failed to Establish An Automatic Right to Indemnification*

An examination of the indemnification clauses in the present case reveals that the Bankrupt Originators' liability did not automatically accrue upon the filing of this suit. The Complaint makes clear that the overwhelming gravamen of Plaintiffs' allegations is expressly grounded in the actions or inactions of Defendants. This is a case about Defendants' conduct, which includes the claims that Defendants have made material misrepresentations and omissions in the Offering Materials. Any references or factual allegations related to the Bankrupt Originators in the Complaint are, at most, incidental to the substantive allegations against

---

[5] Defendants claim that for each of the Offerings, "there is a similar Indemnification Agreement containing almost identical language." (Dkt. No. 1, at ¶ 23). The relevant portions of the Indemnification Agreements are attached as Exhibits 3 through 7 to the Notice of Removal. However, according to Defendants, the relevant indemnification agreement with First NLC has yet to be located. (Id.).

Defendants. As Judge Falk stressed in addressing similar indemnification agreements and arguments:

> This case simply has nothing to do with the conduct of the Bankrupt Originators; Plaintiffs have not pleaded any claims against the Originators and have not named them as parties in this lawsuit. While Defendants may claim that ultimate responsibility for certain misstatements rests with the Bankrupt Originators, it is not an issue that will be decided in this case. Instead, a second proceeding, involving the Originators, will be needed for such a determination to be made. That renders Plaintiffs' claims against Defendants at best "a precursor" to a second dispute between Defendants and the Bankrupt Originators over coverage under the indemnification agreements. It is therefore clear that a another action is required in order for Defendants to establish any indemnification rights vis-à-vis the Bankrupt Originators.

Barclays, 2013 WL 221995, at *4. Judge Falk explained that this was the "precise conclusion reached by Senior District Judge Walls in a related case, Prudential v. J.P. Morgan, et al., No. 12–3489, 2012 WL 6771977 (D.N.J. Dec. 20, 2012) . . . ." Barclays, 2013 WL 221995, at *4.[6] Faced with similar arguments and indemnification agreements that this Court faces, both Judge Falk and Walls rejected the argument that indemnification was automatic and provided a sufficient basis for "related to" jurisdiction. This Court agrees.

This Court finds that, just as in Barclays, Plaintiffs' claims against UBS Defendants are "at best a 'precursor' to a second dispute between Defendants and the Bankrupt Originators over coverage under the indemnification agreements." 2013 WL 221995, at *4. The Third Circuit has repeatedly rejected "related to" jurisdiction in circumstances identical to this case, where

---

[6] Judge Walls explained that "[t]he suit before this Court involves alleged untrue statement by Defendants; it does not involve alleged untrue statements by the Bankrupt Originators. While Defendants may wish to claim that the fraud on behalf of the Bankrupt Originators underlies the Plaintiff's Complaint, a lawsuit establishing the Bankrupt Originators' liability is not before this Court. A separate suit would be required to establish whether the Bankrupt Originators' indemnification clause accrued "insofar as such . . . liabilities . . . arise out of or are based upon any untrue statement or alleged untrue statement of material fact contained in . . . the Prospectus Supplement." J.P. Morgan, 2012 WL 6771977, at *4.

defendants would still "be obligated to bring an entirely separate proceeding to receive indemnification" if a judgment was sustained against them in the initial action. See, e.g., Pacor, 743 F.2d at 995 (holding lack of federal jurisdiction and affirming remand order where defendant could pursue contingent indemnity claim against debtor only in an "entirely separate proceeding"); In re Fed.-Mogul Global, 300 F.3d at 381-82 (same); Steel Workers, 295 B.R. at 750 ("Contingent liability will not suffice. The necessity of a future action to fix the debtor's liability after resolution of the pending lawsuit precludes the exercise of 'related to' jurisdiction.").

Here, there are determinations that must be made in a second proceeding with respect to whether the present lawsuit is covered under the indemnification agreement, the allocation of any blame between Defendants and the Bankrupt Originators, and any rights to indemnification. See J.P. Morgan, 2012 WL 6771977, at *4 (finding no "related to" jurisdiction because "upon resolution of the present suit . . . there will be an outstanding issue as to whether the Bankrupt Originators were liable for [Defendants'] fraud."). Therefore, Defendants are not entitled to automatic indemnification under the respective indemnification agreements because such rights are too attenuated and contingent on the outcome of this lawsuit to confer "related to" bankruptcy jurisdiction in this case.

## ii. *Defendants' Indemnification Claims Could Not "Conceivably" Impact the Bankruptcy Proceedings*

Defendants also contend that this action will have a "conceivable effect" on the bankruptcy proceedings of the Bankrupt Originators because Defendants' indemnification rights will potentially reduce the assets available for distribution to other creditors. (Dkt. No. 20, at 13). Defendants allege that its right to attorneys' fees and costs accrued immediately upon the filing of a claim and could conceivable have an effect on the distribution of the Bankrupt

10

Originators' assets. (Dkt. No. 1, at ¶ 26). However, Defendants, in its Notice of Removal and brief, have not identified or provided evidence that it filed a single timely proof of claim asserting their indemnification rights in any of the pending bankruptcy proceedings. (See Dkt. No. 1; Dkt. No. 20). Plaintiffs contend that the claims bar dates for each of the four bankruptcies identified by UBS have long since passed.[7] "This is noteworthy since a creditor seeking to recover must file a proof of claim before the court-imposed bar date." Barclays, 2013 WL 221995, at *5 (emphasis added); see, e.g., Chemtron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995); Allstate Ins. Co. v. Merrill Lynch & Co., No. 11–2280, 2011 U .S. Dist. LEXIS 124333, at *6–9 (S.D.N.Y. Aug. 15, 2011) (rejecting "related to" bankruptcy jurisdiction in RMBS case when defendants did not file timely proofs of claim in related bankruptcy). Thus, by failing to file proofs of claims in any of the proceedings, Defendants have foreclosed the already extremely remote chance this case could impact the bankruptcy proceedings. See Barclays, 2013 WL 221995, at *5.

Furthermore, Defendants do not contend that they could submit proofs of claim after the bar date. However, even if they did, the same argument was recently rejected in an analogous case, Sealink Funding Ltd. v. Bear Stearns & Co., No. 12–1397, 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012). In Sealink, the defendants attempted to remove state law fraud claims associated with RMBS purchases to federal court relying on "related to" bankruptcy jurisdiction. Id. at *1. However, there, as here, the defendants had not filed any proofs of claim in the "related"

---

[7] Plaintiffs explain that the claims bar dates for each of the four bankruptcies identified by UBS have long since passed: (1) the bar date for the Fremont bankruptcy was November 10, 2008; (2) the bar date for the New Century bankruptcy was August 31, 2007; (3) the bar date for the Meritage bankruptcy was June 24, 2009; and (4) the bar date for the First NLC bankruptcy was September 11, 2008. (Dkt. No. 6-1, at 19, citing Rome Decl. Exs. 2-5). Plaintiffs also contend that bankruptcy plans have already been confirmed in two of the proceedings—Fremont and New Century—and that any contingent indemnity claims are barred. (Id., at 20, citing Rome Decl. Exs. 6-8).

bankruptcies and the claims bar dates had passed. Id. at *3. The court explained how failing to submit proofs of claim eliminated any "conceivable" chance that the bankruptcy estate could be impacted by the indemnification claims, thereby eliminating the possibility of "related to" jurisdiction. Id. Specifically, the court noted that:

> Defendants' related-to jurisdictional assertion is premised on the proposition that their potential indemnification claims and recovery against Bankrupt Originators could conceivably affect those debtors' estates. However, the indemnification claims against the Bankrupt Originators cannot affect the bankruptcy estate or the allocation of property to creditors unless Defendants are in a position to receive actual distributions on account of allowed indemnification claims. There is no prospect of such an allowance and distribution with respect to unsecured claims that are neither filed in a bankruptcy proceeding or scheduled as undisputed by a Chapter 11 debtor in possession.
>
> A remote chance that a late-filed claim might be allowed, without evidence of pursuit of such claims or any demonstration that the claims, if allowed, would have a financial impact on the estate, is too remote and speculative to support the exercise of "related to" jurisdiction of this non-core state law fraud claim.

Id. at *3–5. In Barclays, Judge Falk adopted this reasoning and held that "Defendants cannot create 'related to' jurisdiction by referring to the mere existence of a bankruptcy proceeding. Some actual affirmative step is required in order for Defendants' indemnification claims to have a 'conceivable' impact on a debtor's estate." 2013 WL 221995, at *6. This Court agrees with Judge Falk and finds that "Defendants' inaction in the face of their speculative indemnification claims as to only some of Plaintiffs' claims conclusively demonstrates that this case has no 'conceivable' impact on any bankrupt estates." Id.[8]

---

[8] Defendants attempt to rely on Belcufine v. Aloe, 112 F.3d 633 (3d Cir.1997), to avoid this result, but District Judge Walls has already explained why these cases do not apply. See J.P. Morgan, 2012 WL 6771977, at *5. In short, Belcufine arose under dramatically different facts and involved employee indemnification claims against corporate managers that conceivably could have had a direct impact on a bankrupt estate. See Barclays, 2013 WL 221995.

12

In sum, Defendants have failed to carry their burden of showing that either: (1) any indemnification obligations on the part of the Bankrupt Originators have been "automatically triggered" by the filing of Plaintiffs' Complaint; or (2) that a subsequent lawsuit (or suits) against the Bankrupt Originators will not be necessary to determine their indemnification obligations to Defendants. As such, in accordance with the opinions by Judges Walls, Falk, and Martini, based upon similar facts, arguments, and indemnification agreements, this Court concludes that under Pacor, the indemnification agreements at issue are insufficient to create "related to" federal jurisdiction under Section 1334(b).[9] Thus, "[t]his purely state law case between non-bankrupt parties has no business in federal court, district or bankruptcy." Barclays, 2013 WL 221995, at *1.

## C. Abstention

### i. Mandatory Abstention

Even if the Court had concluded that "related to" jurisdiction existed in this case under Section 1334(b), remand would still be mandated. 28 U.S.C. § 1334(c)(2) provides that a district court must abstain from proceeding with a "related to" bankruptcy case in the following circumstances:

> Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

---

[9] Axiomatically, the various cases cited by Defendant both in its brief and at oral argument from jurisdictions outside of the Third Circuit are not binding upon this Court. Furthermore, this Court's application of those extraneous cases to achieve a contrary result here would be inappropriate given the clarity of binding Third Circuit precedent, and the immediate applicability of the two well-reasoned recent decisions from Courts within the District New Jersey that are based upon similar facts.

13

Section 1334(c)(2) (emphasis added). As Judge Falk noted in Barclays, the Third Circuit has decided that the following six elements must be demonstrated for mandatory abstention to be proper under Section 1334(c)(2):

> (1) the motion to abstain was timely; (2) the proceeding is based on state law claim or cause of action; (3) the action does not "arise in" a bankruptcy case or "arise under" title 11; (4) federal courts would not have jurisdiction over the case but for its relation to a bankruptcy case; (5) the action "is commenced" in a state forum of appropriate jurisdiction; and (6) the action can be "timely adjudicated in a state forum of appropriate jurisdiction.

Barclays, 2013 WL 221995 at *6-7 (citing Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006)).

Defendants only dispute three (3) of the foregoing six (6) elements. First, Defendants challenge factor six (6)—i.e. whether the action can be "timely adjudicated" in state court. (Dkt. No. 20, at 19-20). Similar to the arguments raised in Barclays, Defendants argue that the action cannot be timely adjudicated in state court given the "severely limited resources of Essex County courts", "the current shortage of judges", and "its unusually heavy caseload." (Dkt. No. 20, at 20). Plaintiffs contend that "there is nothing to suggest that the Superior Court of New Jersey, Law Division, Essex County, could not handle this matter in a timely fashion." (Dkt. No. 6-1, at 19-20 (collecting cases)). Plaintiffs further cite to Judge Falk's opinion in Barclays where the Court pointed out that Prudential already has several related cases pending in Essex County that are "proceeding efficiently." (Dkt. No. 6-1, at 20); see Barclays, 2013 WL 221995 at *7.[10]

---

[10] Judge Falk explained:

> In fact, contrary to Defendants' suggestion about the Essex County Superior Courts, a related case that is already pending in Essex County, Prudential Ins. Co. v. Morgan Stanley, No. ESX–L–3080–12 (N.J. Sup. Ct. Essex Cnty., filed Apr. 25, 2012), is proceeding efficiently. The court has conducted several conferences, decided a number of discovery motions, and issued a proposed case management order.

14

Defendants' argument is further vitiated by the August 28, 2013 Certification of Plaintiffs' Counsel Daniel L. Brockett, Esq., (the "Brockett Certification"). (Dkt. No. 26). The Brockett Certification, which was provided after oral argument at the Court's request, describes the coordination of three (3), currently pending, RMBS cases brought by Prudential in Essex County Superior Court. Further, the Brockett Certification attaches various case management orders issued by the Honorable James S. Rothschild, Jr., J.S.C., who is presiding over the coordinated Prudential RMBS cases in Essex County. (Id.) Critically, the Brockett Certification makes clear that: two (2) of the coordinated cases are the Barclays case that was remanded by Judge Falk/Judge Martini, and the J.P. Morgan case that was remanded by Judge Walls – both of which this Court discusses extensively herein; and that all three (3) coordinated cases are being earnestly litigated with deliberate speed through case management orders and dispositive motion practice. (Id. at ¶¶ 2-8, Exs. A-E). Accordingly, this Court finds that the "timely adjudicated" requirement has been satisfied.[11]

Second Defendants challenge factor two (2)—i.e. whether the proceeding is based on state law claims or causes of action. (Dkt. No. 20, at 20-21). A plain reading of the Complaint shows that Plaintiffs action is based solely on state law claims. (Compl.; Dkt. Nos. 1-3, 1-4, ¶¶ 476-565 (Counts I-IV)). Remarkably, Defendants contend that Plaintiffs' lawsuit is, in part,

---

Barclays, 2013 WL 221995, at *7. The Judge went on to note that:

> In addition to the Morgan Stanley case there are at least two additional, related Prudential cases pending in Essex County Superior Court, Prudential v. RBS Fin. Prods., L–6206–12, and the J.P. Morgan case recently remanded by District Judge Walls. In light of the fact three related cases are now proceeding in state court, it is artificial to dispute whether this case will be "timely adjudicated" in state court.

Id. at *7 n.10

[11] As Judge Falk noted, "if anything is delaying the state court from proceeding expeditiously with this case, it is Defendants' ill-fated removal to federal court." Barclays, 2013 WL 221995, at *7.

15

based on federal law because they allege a violation of the New Jersey civil RICO which borrows its structure, purpose and remedies from the federal statute. (Dkt. No. 20, at 20). In Prudential Ins. Co. of Am. v. RBS Fin. Prods., No. 12-6822, 2013 U.S. Dist. LEXIS 156023, at *14 (D.N.J. Oct. 29, 2013) (Debevoise, J.), Judge Debevoise addressed an identical argument by defendants and explained that "[d]efendants surely understand that many state statutes are informed by federal interpretations of comparable federal statutes, and that this in no way creates independent federal jurisdiction over those state statutes." Thus, despite Defendants claims to the contrary, Plaintiffs cause of action for a violation of the New Jersey civil RICO statute is based on state law. (Compl.; Dkt. No. 1-4, ¶¶ 513-565, citing N.J.S.A. 2C:41-1 et seq.).

Finally, Defendants challenge factor four (4)—i.e. whether federal courts would have jurisdiction over the case but for its relation to a bankruptcy case. Defendants contend that this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction among all properly joined Plaintiffs and Defendants. (Dkt. No. 20, at 21). As discussed below, Defendants have failed to carry their heavy burden of establishing fraudulent joinder. Accordingly, there is no alternative basis for federal jurisdiction in this case.

This Court finds that all of the factors for mandatory abstention are satisfied. Therefore, even if there were "related to" jurisdiction, this Court would still remand this case under the mandatory abstention principles of 28 U.S.C. § 1334(c)(2).

### ii. Permissive Abstention and/or Equitable Remand

Plaintiffs urge this Court to exercise its equitable powers and abstain from this case by remanding to state court. (Dkt. No. 6-1, at 27-32). If the Court had concluded that "related to" jurisdiction existed in this case under Section 1334(b), but that Section 1334(c)(2) did not mandate abstention, the Court would exercise its discretion and abstain pursuant to 28 U.S.C. §

1334(c)(1) and/or equitably remand this case pursuant to 28 U.S.C. § 1452(b). In pertinent part, Section 1334(c)(1) states that:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11.

28 U.S.C. § 1334 (c)(1). Similarly, Section 1452(b) states in pertinent part that the court to which a claim or cause of action that is "related to" a bankruptcy case "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

As Judge Walls noted in J.P. Morgan, "[t]he considerations relevant to determine the appropriateness of equitable remand and permissive abstention under Sections 1452(b) and 1334(c)(1) are essentially identical." 2012 WL 6771977, at *6 (citations omitted). As such:

> Among the factors to be considered by courts in making a decision whether to abstain and remand are the following: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to involuntarily removed defendants.

Id. at *6-7 (quoting In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 760 (D.N.J. 1996)); see also Barclays, 2013 WL 221995, at *8. In evaluating motions to remand by Prudential in nearly identical RMBS proceedings, Judges Walls, Martini, and Falk each concluded that permissive abstention and equitable remand provided an additional basis for remand to New Jersey Superior Court. See J.P. Morgan, 2012 WL 6771977, at *6-8; Barclays, 2013 WL 221995, at *7-9. This Court agrees, and finds that if the Court had "related to" jurisdiction, all of the foregoing seven (7) factors favor abstention and remand.

First, there is no reason that keeping this case in federal court would benefit the efficient administration of the bankruptcy estates. This Court is not charged with the administration of any of the Bankrupt Originator's bankruptcy estates. In fact, the bankruptcy proceedings involving the Bankrupt Originators are not pending in any court in New Jersey but rather in California, Delaware, Texas, and Florida. (See Dkt. No. 1, at 5). See J.P. Morgan, 2012 WL 6771977, at *7 (first factor of permissive abstention satisfied because "none of the pending bankruptcies are before this Court and the bankruptcy proceedings of the Bankrupt Originators are being handled by a variety of federal bankruptcy courts throughout the country. Thus, regardless of whether this Court or the state court establishes liability, subsequent costs, or 'conceivabl[e] affect[s],' efficacy would be the same."); Barclays, 2013 WL 221995, at *8 ("Thus, keeping this case in federal court in New Jersey would not benefit either bankruptcy proceeding, especially since no party has suggested that this case should be transferred to either of the federal courts where the bankruptcies are actually pending. Thus, in terms of the impact on the bankruptcy estates, it would actually make absolutely no difference if this case was pending in state or federal court in New Jersey.").

Second, as previously discussed, Plaintiffs' action involves only state law claims. While Plaintiffs' "claim under the NJRICO statute could conceivably be informed by federal interpretations of the federal RICO statute, it does not alter the fact that a claim under the NJRICO statute is exclusively one under state law." RBS Fin. Prods., 2013 U.S. Dist. LEXIS 156023, at *19.

Third and fourth, comity and state law considerations favor abstention. While Plaintiffs' state law claims for fraud and negligent misrepresentation are fairly routine, Plaintiffs point out that New Jersey's RICO statute is "particularly complex" and "significantly different from the

18

comparable federal RICO statute." (Dkt. No. 6-1, at 30 (citing J.P. Morgan, 2012 WL 6771977, at *7; Barclays, 2013 WL 221995, at *8; State v. Ball, 141 N.J. 142, 160-62 (1995) (outlining differences between the New Jersey RICO and federal RICO laws)). "While federal courts are capable of deciding issues of state law and often do, 'decisions of state law should be avoided [by a federal court] . . . as a matter of comity' when possible." Barclays, 2013 WL 221995, at *8 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Thus, the complexity of the state law RICO claim and comity considerations favor remand.

Fifth, this case is remote relative to the proceedings in the main bankruptcy cases. The liabilities of the Bankrupt Originators are not going to be decided here. Moreover, as previously discussed, Defendants have not filed proofs of claims in those bankruptcies, making recovery unlikely.

Finally, the sixth and seventh factors, the right to a jury trial and the prejudice to involuntarily removed defendants, are inapplicable.

In sum, because all of the factors the Court must consider in relation to permissive abstention under Section 1334(c)(1) and equitable remand under Section 1452(b) clearly weigh against retention of this case, the Court concludes that abstention and remand under either or both of those statutes is appropriate.[12]

## D. Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332

Defendants' alternative argument is that PRIAC and PIP2 were fraudulently joined in this action for the purpose of destroying diversity jurisdiction. (Dkt No. 1). Defendants claim that those two entities lack standing and should be dismissed. (Id.). This Court notes, however, that at the oral argument on August 27, 2013, Defendants' counsel, Mr. Alan C. Turner, noted that

---

[12] The Court notes that Judges Walls and Falk came to identical conclusions. See J.P. Morgan, 2012 WL 6771977, at *6-8; Barclays, 2013 WL 221995, at *7-8.

there were two entities referenced in their Notice of Removal but "the dispute is now whether the one entity PRIAC destroys or defeats diversity." (Dkt. No. 37, at 17, ln 1-5). Accordingly, the issue before this court is whether PRIAC is a proper party to this suit. Defendants contend that if PRIAC is dismissed, federal subject matter jurisdiction will exist pursuant to 28 U.S.C. §1332(a)(1). (Dkt. No. 1). Under 28 U.S.C. §1332(a)(1), subject matter jurisdiction exists where: (1) "the matter in controversy exceeds the sum of $75,000"; and (2) the parties are "citizens of different states." Additionally, for purposes of determining diversity, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

On the face of the Complaint, there is no diversity jurisdiction in this case. (Dkt. No. 1-3, at ¶¶ 18-28). Defendants argue that PRIAC has been fraudulently joined in this case to destroy the parties' diversity. (Dkt. No. 1, at ¶¶ 28-45; Dkt. No. 20). Defendants assert that if PRIAC is dismissed, the parties will be diverse, and federal subject matter jurisdiction will exist in this case under Section 1332. (Dkt. No. 1; Dkt. No. 20).

Here, Defendants' argue that PRIAC is not a proper plaintiff in this case because it did not "actually purchase[]" the Certificates at issue. (Dkt. No. 20, at 25). According to Defendants, Prudential Investment Management, Inc. ("PIM"), a diverse entity not named in this action, was the true purchaser of the Certificates alleged to have been purchased by PRIAC. (Id.). Therefore, Defendants contend that PRIAC lacks standing to bring its fraud and RICO claims. (Id., at 25-26). Plaintiffs counter that while PIM was involved in the purchase of the securities, PIM was only acting as an agent/investment advisor to PRIAC, and that PRIAC is the proper Plaintiff who owns, "holds title to the purchased securities, and bears the risk of loss." (Dkt. No. 6-1, at 33 (citing Compl. ¶ 22)). Thus, according to Plaintiffs, PRIAC has standing to

bring the fraud and RICO claims due to UBS's misrepresentations and omissions directed to PIM, its agent. (Dkt. No. 6-1, at 34).

Defendants can only remain in federal court if they establish that PRIAC was fraudulently joined for the purpose of destroying diversity. See Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.1992); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir.1985). The burden of establishing fraudulent joinder is heavy. Batoff, 977 F.2d at 851 (quotation omitted). All factual allegations in the complaint are assumed to be true, Steel Valley Auth. v. Union Signal & Switch Div., 809 F.2d 1006, 1010 (3d Cir.1987), and joinder is considered fraudulent only when "there is no reasonable basis in fact or colorable ground supporting the claim" in dispute. Batoff, 977 F.2d at 851. For a claim to lack a colorable basis, "it must be wholly insubstantial and frivolous." Id. at 852.

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." In re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006) (citation omitted). "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." Id. at 216. However, "[f]raudulent joinder is not meant to be a substitute for a merits analysis." Barclays, 2013 WL 221995 at *10 (citing In re Briscoe, 448 F.3d at 219 ("courts must be careful not step from the threshold jurisdictional issue into a decision on the merits")). Indeed, "the inquiry into the validity of the complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder." Batoff, 977 F.2d at 852 (emphasis added). Therefore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action . . . the federal

court must find that joinder was proper and remand the case to state court." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir.1990) (quotation omitted).

First, as Judge Falk noted in Barclays while rejecting the functionally identical argument made by Defendants here, the applicability of fraudulent joinder under these circumstances is doubtful. Barclays, 2013 WL 221995 at *10 (noting that the Third Circuit has never approved extending the doctrine of fraudulent joinder to attack the joinder of Plaintiffs, and discussing persuasive decisions from around the country that declined to do so). Assuming, however, that fraudulent joinder is a relevant consideration, the Court concludes, as Judge Falk did, that PRIAC has not been fraudulently joined as a Plaintiff, and therefore Defendants' alternative argument for subject matter jurisdiction under 28 U.S.C. § 1332 fails.

Defendants fail to meet the burden of establishing fraudulent joinder. As Judge Falk explained, "[f]raudulent joinder is about frivolousness. It is a doctrine that is meant to address clearly meritless situations, such as claims plainly barred by the statute of limitations." Barclays, 2013 WL 221995, at *10 (citing In re Briscoe, 338 F.3d at 223–24 (fraudulent joinder applies to claims barred by statutes of limitation); Roggio v. McElroy, Deutsch, Mulvaney & Carpenter, 415 Fed. App'x 432, 433 (3d Cir. 2011) (fraudulent joinder applied when lawsuit was barred by absolute litigation privilege)). Just as the court found in Barclays, Defendants' argument here is much different, focusing on a question of whether a principal can sue for a fraud allegedly perpetrated upon an agent. See Barclays, 2013 WL 221995, at *10. Defendants contend that PRIAC lacks standing because a party itself must rely on misstatements in order to proceed with a fraud claim. (Dkt. No. 20, at 26 (citing Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (2000)). Plaintiffs counter that "[a] person who fraudulently . . . enters into a transaction with [ ] an agent . . . is subject to liability to the principal whether the fraud is practiced on the agent or upon the

principal." (Dkt. No. 6-1, at 33-34 (quoting Restatement (Second) of Agency § 315)). However, "regardless of which party is ultimately correct, the reality is that this standing dispute does not fit within the fraudulent joinder framework." Barclays, 2013 WL 221995, at *10; RBS Fin. Prods., 2013 U.S. Dist. LEXIS 156023, *23 ("To the extent this authority applies to Plaintiffs' claims in this case, it speaks to a merits analysis of those claims, which would be completely inappropriate in determining fraudulent joinder."); In re Briscoe, 448 F.3d at 219 ("[A] district court must not step from the threshold jurisdictional issue into a decision on the merits.") (quotation omitted)). This Court will not engage in a merits-based factual inquiry into the purchase and ownership of the Certificates at issue by PRIAC.

Simply put, according to Plaintiffs, PRIAC owns $7,324,500.00 worth of Certificates in one of the securitizations at issue. (Dkt. No. 6-1, at 33 (citing Compl., Ex. B.)). As Judge Falk explained,

> Given PRIAC's undisputed ownership of a large quantum of securities included in the Complaint, it is impossible to conclude that it is obviously and patently frivolous for PRIAC to be named as Plaintiff in the case. At best, the parties have a legal dispute with conflicting authorities. And the bottom line is that the parties' standing dispute would indisputably cross the line into a merits determination that would undoubtedly require at least as comprehensive an examination as a Rule 12(b)(6) inquiry, which is more than is permitted in the context of fraudulent joinder. See Batoff, 977 F.2d at 852 (fraudulent joinder analysis less searching than motion for failure to state a claim). Defendants' challenge to PRIAC's standing is an issue that should have been addressed prior to removal in a motion to dismiss filed in state court, not following removal based on a strained, far-fetched plaintiff-focused theory of fraudulent joinder. See Johnston Indus., 45 F. Supp. 2d at 1314 ("the court reiterates its finding that a state court motion to dismiss is the proper procedural vehicle through which [Defendant] should pursue its claim that [alleged fraudulently joined plaintiff] lacks standing").

Barclays, 2013 WL 221995, at *11. This Court wholeheartedly agrees with the reasoning of Judge Falk. As such, because the parties' are diverse on the face of the Complaint, and Defendants have failed to carry their "heavy burden of persuasion" of establishing that PRIAC has been fraudulently joined, the Court concludes that federal diversity jurisdiction pursuant to Section 1332 does not exist in this case.[13]

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' Motion to Remand be **GRANTED** in light of the Court's conclusion that federal subject matter jurisdiction does not exist in this case under any theory.

_____
**MADELINE COX ARLEO**
**United States Magistrate Judge**

Dated: December 16, 2013

cc:    Clerk
        Hon. Kevin McNulty
        All Parties
        File

---

[13] In so deciding, the Court notes that whether Plaintiffs' failure to specifically argue the non-diversity of PIP2 functions as a concession (see Dkt. No. 20 at n.17) is moot because, as previously noted, at oral argument, Defendants' counsel explained that the only question is whether PRAIC is a proper party in this lawsuit. (Dkt. No. 27, at 17, ln 1-7).